UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. L.,<br><br>           Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>           Defendant. | Case No. 20-cv-07919-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND UPHOLDING DENIAL OF BENEFITS** |

I. INTRODUCTION

Plaintiff M.L.[1] appeals the decision of the Commissioner of Social Security denying her disability benefits under the Social Security Act ("SSA"). An Administrative Law Judge ("ALJ") reviewed S.L.'s application and determined she was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment, the Commissioner's motion will be granted and M.L.'s denied. M.L. has not shown the ALJ erred.

---

[1] Because opinions by the Court are more widely available than other filings, and this order contains potentially sensitive medical information, it will refer to the plaintiff only by her initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

II. BACKGROUND

In June of 2018, M.L. applied for Supplemental Security Income pursuant to Title XVI of the Social Security Act ("the Act"). (AR 228-29) The Commissioner denied the application initially and on reconsideration. (AR 93-94, 109-10) Following a hearing requested by M.L., the ALJ issued a decision finding M.L. was not disabled as defined by the Act because she could perform jobs that exist in significant numbers in the national economy. (AR 12-35) After the Appeals Council declined to disturb the ALJ's decision, it became the Commissioner's final decision. (AR 1-6) This action for judicial review pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) followed.

M.L.'s physical condition

In June of 2017, M.L. reported she had been experiencing neck and upper extremity pain for the preceding two years. She had previously treated it with gabapentin, but was using no pain medication at the time. (AR 354, 389) Examination showed some tenderness in her cervical spine region, but normal range of motion and intact strength in her upper extremities. (AR 355) Care providers recommended physical therapy and medication, as M.L. had little to no treatment in the past. (AR 355) In November of 2017, M.L.'s neck examination showed no abnormality, but she had tenderness. (AR 387, 410) She declined pain medication. (AR 389)

In December of 2017, June of 2018, and March of 2019, M.L. had a normal range of motion in her neck. (AR 439, 442, 488) In June of 2019, M.L. reported ongoing pain in her neck but still had normal range of motion. (AR 474, 494)

At her physical consultative examination in October of 2019, M.L. had normal gait and was able to get on and off the exam table without issue. (AR 583) Examination showed no abnormality in her abdomen. (AR 584) While her cervical spine range of motion was somewhat limited, she had normal strength throughout, no atrophy, and normal sensation. (AR 585) In August of 2019, M.L. reported increased pain, but that she had not attended physical therapy. (AR 1096-97) She exhibited normal coordination, muscle tone, gait, station, and sensation. (AR 1098)

M.L. expressed her desire to proceed with fusion surgery of the C3 to C4 and C4 to C5

vertebrae. (AR 1098-99) Imaging studies prior to the surgery showed degenerative changes in her cervical spine. (AR 355, 419, 1106-07, 1144) After postponements due to potential complications from M.L.'s methamphetamine use, she underwent cervical fusion surgery in February of 2020, shortly before the ALJ hearing. (AR 1127-28, 1132-33)

As to M.L.'s abdominal issues, imaging studies confirmed a hiatus hernia in March of 2019, which had appeared in imaging studies in 2013. (AR 471, 857, 1104) M.L. reported vomiting in June 2019, but she denied continuing abdominal pain, nausea, or vomiting. (AR 493-94) Two months later, M.L. again denied any abnormality in her gastrointestinal system. (AR 1097) Her condition was managed intermittently with proton-pump inhibitors and antacids. (AR 405, 437, 445, 486-87, 1112)

M.L.'s mental condition.

In June of 2017, M.L. was not in acute distress, she was alert and oriented, and had appropriate affect. (AR 354) In November of 2017, M.L. visited the emergency room for chest pain after using methamphetamines, but her examination again was unremarkable. She showed adequate insight and judgment, no acute distress, and good eye contact. (AR 387)

At her January 2019 psychological consultative examination with Paul Martin, Ph.D., M.L. reported a history of mental issues, including depression and anxiety. She described her symptoms and reported she does not like to be around people. (AR 464) M.L. "never utilized mental health services" and denied any hospitalizations or use of psychotropic medication. (AR 464) Her mental status examination showed an anxious mood and affect, but fair attention and fund of knowledge, adequate memory, ability to do simple calculations, linear, organized and goal directed thought processes, and normal thought content. (AR 465) The remaining examinations were unremarkable (AR 474, 494, 1135).

Opinion evidence and prior administrative medical findings

State agency medical consultants, G. Taylor, M.D., and S. Amon, M.D., found in December 2018 and February 2019, respectively, that M.L is limited to a range of light work, with postural and environmental limitations. (AR 90-91, 106-07) The ALJ found these prior

CASE NO. 20-cv-07919-RS
3

administrative medical findings persuasive. (AR 26). State agency psychological consultants, N. Haround, M.D., and Catherine Nunez, Ph.D., found in January and February of 2019, respectively, that M.L. had no mental limitations. (AR 88, 103-04). The ALJ stated those findings were partially persuasive. (AR 28). In January of 2019, consultative examiner Paul Martin, Ph.D., opined M.L. had mild limitations in performing simple repetitive tasks and accepting instructions from supervisors, but otherwise had moderate limitations. (AR 466) The ALJ found Martin's opinion partially persuasive. (AR 27)

In October of 2019, consultative examiner Robert Tang, M.D., opined that M.L. had no standing or walking limitation, could lift up to twenty pounds occasionally and ten pounds frequently, and had limitations working around heights and heavy machinery. (AR 586) On a checkbox form, Dr. Tang also opined M.L. could lift up to twenty pounds continuously, could sit, stand, or walk for two hours each without interruption, and could sit, stand, or walk three hours each in an eight-hour day. (AR 587-88) Dr. Tang opined that M.L. had no manipulative limitations, but then also specified she could handle and finger frequently with the left hand. (AR 586, 589) The ALJ found Dr. Tang's opinions partially persuasive. (AR 26)

Following M.L.'s neck surgery in March 2020, Desmond Erasmus, M.D., provided discharge instructions stating she was permitted to walk to tolerance, but was to avoid bending and twisting of the neck. (AR 1177). The ALJ found these limitations applied to M.L.'s recovery period, and not persuasive evidence of ongoing disability. (AR 26)

Activities of daily living

M.L. reported she is able to complete her hygiene care without issue, prepare simple meals, complete laundry, clean dishes and her bathroom, vacuum, drive, go shopping, and ride a bicycle (AR 277-79) M.L. stated she plays games on her phone and socializes with friends and family. (AR 280) She reported she can walk three blocks before needing to rest. (AR 281) At her consultative examination, M.L stated she is independent in activities including preparing simple meals, doing light household chores, and using public transportation, and has a valid driver's license. (AR 465) She stated she lives with friends. (AR 465)

Hearing evidence

At the hearing, M.L. reported pain from the surgery and that she was not to lift more than five pounds for four months. (AR 45, 47) She testified to issues with nausea and vomiting since 2008, and stated she spends five to six hours in the bathroom in an eight-hour day. (AR 49, 51-52) M.L.'s sister, Kimberly, testified that M.L. lived with her over the last few years and that M.L. vomits regularly. (AR 61-62). Kimberly stated she helps M.L. with household chores. (AR 64-65) Kimberly reported M.L. is able to manage her finances and drive (AR 65). The vocational expert testified that a hypothetical person with M.L.'s vocational profile could perform the representative positions of material distributor, office helper, and hand packager. (AR 71-72).

The ALJ decision

In her decision, the ALJ applied the five-step sequential evaluation process that the Commissioner's regulations prescribe. See 20 C.F.R. § 416.920(a)(4). M.L. had not worked at a substantial gainful activity level since her alleged onset date through the date of the decision (step one). (AR 18) She had severe impairments (step two), but these impairments did not meet or equal any of the per se disabling impairments listed in the Commissioner's regulations (step three). (AR 18, 20-22) The ALJ considered M.L.'s residual functional capacity ("RFC") and concluded that she could perform light work, except she could climb ramps and stairs no more than frequently, and climb ladders, ropes or scaffolds no more than occasionally. (AR 22) She could frequently balance and crouch, and occasionally stoop, kneel, or crawl. (*Id.*) M.L. should avoid concentrated exposure to fumes, dusts, gases, and other pulmonary irritants and refrain from working around heights and heavy machinery. (*Id.*) She is able to understand, remember, and perform simple, routine tasks and make simple, work-related decisions. (*Id.*) M.L. is capable of performing job duties that do not require in-depth teamwork or more than occasional interaction with supervisors, coworkers, or the public. (*Id.*) She can do low stress work, defined as simple, routine work in an environment free of fast-paced or production requirements. (*Id.*) M.L. would need a stable work environment, meaning few changes, if any, in the day-to-day work setting, work tools, or work processes. (*Id.*)

The ALJ found M.L.'s allegations of disabling symptoms to be inconsistent with the longitudinal record, including objective medical evidence, minimal treatment (aside from the cervical fusion surgery), and her largely intact activities of daily living. (AR 20-21, 23-24, 26-28) While M.L. had no past relevant work, the ALJ concluded she could perform other jobs available in the national economy such as material distributor, office helper, and hand packager. (AR 28-29) On that basis, the ALJ found that M.L. was not disabled under the Act. (AR 29)

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision must be affirmed if it is supported by substantial evidence and is free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all of the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id*. at 1258. In Social Security cases, federal courts "are not triers of fact" and a court "may not substitute its judgment for that of the [ALJ]." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

### IV. DISCUSSION

A person is "disabled" for the purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow the five-step sequential

inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) she is not working; (2) she has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as *a priori* disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that she cannot do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)–(iv).

If the claimant successfully proves she cannot do her past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the residual functional capacity ("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4). An individual's RFC is the most she can still do despite her limitations. See 20 C.F.R. § 416.945(a)(1).

Here, M.L. contends the record shows she has greater limitations than reflected in the ALJ's RFC finding. M.L. asserts she suffers from "extensive complex physical impairments," stemming in large part from horrific domestic abuse. M.L. points to X-rays and CT scans from 2013 and 2019 that show multiple hernias and lung blockage as well as multiple wedge compression deformities of the lower thoracic and upper lumbar spine. She notes she suffered a collapsed lung and endured a thoracotomy in 2009. She asserts her hiatal hernia "swallowed up her entire stomach" that was not successfully corrected by surgery.

The question, of course, is not whether M.L. had such conditions. Indeed, the ALJ specifically found M.L. suffered severe impairments—hernia, degenerative disc disease/cervical stenosis, status post cervical fusion, kyphosis, and affective disorder—and that those medically determinable impairments significantly limit her ability to perform basic work activities as required by SSR 85-28. (AR 18) The issue was *the extent* to which those impairments limit M.L.'s

functional abilities for purposes of assessing her RFC.

The Commissioner emphasizes the point that this case is governed by new regulations applicable to disability benefits applications filed on or after March 27, 2017. The Ninth Circuit has held the amended regulations displace prior case law that required an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

> For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.

*Id.*

The change in the regulations ultimately is of little import here, however, because M.L. has not pointed to any opinion of a treating physician that called for significantly greater limitations, but which the ALJ rejected. M.L.'s brief does assert that under prior case law, "this treating opinion, while not binding, should be given special consideration." The brief, however, provides no antecedent for "this treating opinion."

Rather than arguing the ALJ improperly disregarded any medical opinion that would have supported more limitations in the RFC, M.L. seems to be arguing that the ALJ gave *too much* weight to the opinions insofar as they did not adequately reflect the seriousness of her conditions and the resulting impact on her ability to function. Particularly in the absence of medical opinions in significant conflict, however, M.L. is effectively asking the court to substitute its judgment for that of the ALJ, which is not proper.

The primary thrust of M.L.'s argument is that the ALJ should have given more weight to the testimony she and her sister presented at the hearing regarding the extent of her impairment. The ALJ, however, properly considered the longitudinal record and gave clear reasons supported by substantial evidence for the findings she made.

The Act and the regulations prohibit granting benefits based solely on a claimant's

subjective complaints. See 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). Thus, where the claimant has provided objective medical evidence of an impairment that could reasonably produce the alleged symptoms, the ALJ evaluates the intensity and persistence of the symptoms. See Social Security Ruling (SSR) 16-3p. The ALJ must then determine whether her statements about symptoms are consistent with (1) the objective medical evidence, and (2) the other evidence in the record. See 20 C.F.R. § 416.929(c)(2)-(3); SSR 16-3p. An ALJ must make specific findings about a claimant's allegations, properly supported by the record and sufficiently specific, to ensure a reviewing court that she did not "arbitrarily discredit" a claimant's subjective testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). Here, the ALJ did just that.

    First, as directed in the regulations, the ALJ considered the objective medical evidence in determining the RFC and how consistent M.L.'s statements were with the objective evidence. See 20 C.F.R. 416.929(c)(2); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence"). While the ALJ could not reject M.L.'s descriptions of her symptoms solely based on the medical evidence, it was a relevant factor to consider. 20 C.F.R. 416.929(c)(2); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptoms "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor."). The ALJ's decision recites specific evidence that supported the RFC even if inconsistent with M.L.'s characterizations of the extent of her symptoms in her testimony at the hearing. For example, the ALJ pointed out that during or near the relevant period, M.L. repeatedly denied nausea, vomiting, and abdominal pain. (AR 24, citing AR 361, 381, 415, 1097) Similarly, while M.L. had some tenderness near her cervical spine, she was assessed with intact sensation in her upper extremities, normal range of motion of her cervical spine, normal reflexes, normal strength, and no abnormality in gait or station. (AR 24-25, citing AR 355, 582-86) Mental status

examinations were routinely unremarkable, showing no acute distress, appropriate behavior, good eye contact, adequate memory, ability to do simple calculations, linear, organized and goal directed thought process, and normal thought content, insight and judgment. (AR 20-21, 26-27, citing AR 464-65, 583, 1097)

Second, the ALJ also considered the type and effectiveness of treatments that M.L. pursued for her symptoms. See 20 C.F.R. § 416.929(c)(3)(iv), (v). The ALJ observed she had not sought significant treatment for her reported vomiting (AR 24), but that her gastrointestinal symptoms had been managed intermittently with protein pump inhibitors and antacids during the relevant period (see AR 405, 437, 445, 486-87, 1112). M.L. denied ever using mental health services, or requiring emergency treatment for psychological issues or psychiatric hospitalizations (AR 27, citing AR 464). *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits").

As to her cervical spine condition, there is little evidence that M.L. pursued conservative treatment prior to the fusion surgery in February 2020, despite care providers' recommendations to do so. (AR 24, citing AR 355, 1096) *See Burch*, 400 F.3d at 681 ("ALJ is permitted to consider lack of treatment in his credibility determination"); *Bunnell*, 947 F.2d at 346 (failure to follow prescribed treatment is a relevant consideration in assessing credibility of the claimant's complaints). M.L. insists the ALJ incorrectly assumed the fusion surgery would be a complete cure, or nearly so, when in fact it was only intended to address part of her problems. The ALJ, however, made no such assumption. Rather, her conclusion that the evidence did not support a finding of disability was not dependent on the degree to which the fusion surgery might or might not result in less pain over the long term. The ALJ merely concluded that the *additional* limitations M.L. was experiencing immediately following the surgery (increased pain, movement restricted by an external support cage) were temporary. Notably, despite an invitation to do so, M.L. provided no additional medical or opinion evidence to the Appeals Council, which did not issue its denial until approximately six months after the ALJ's decision. (AR 1-4, 7, 345-51)

1    Third, the ALJ evaluated M.L.'s testimony regarding her alleged symptoms and limitations
2    in light of her reported daily activities. 20 C.F.R. § 416.929(c)(3)(i); *Tommasetti v. Astrue*, 533
3    F.3d 1035, 1039 (9th Cir. 2008) (an ALJ may consider many factors in weighing a claimant's
4    testimony, including daily activities); *Molina*, 674 F.3d at 1112 (ALJ may consider "whether the
5    claimant engages in daily activities inconsistent with the alleged symptoms"). Throughout the
6    relevant period, M.L. was able to drive, go shopping, cook, pay bills, complete personal care and
7    housework, and use public transportation independently. (AR 21, citing AR 277-80, 465) M.L.
8    correctly observes that one need not "vegetate in a dark room excluded from all forms of human
9    and social activity" to be found disabled. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).
10   The ALJ, nevertheless was entitled to conclude M.L.'s daily activities undermined her assertions
11   regarding the degree of her symptoms.

     The ALJ acknowledged the evidence in the record suggesting that M.L. did have certain
     limitations. (See AR 20-21, 23-28). Substantial evidence, however, supports her conclusion that
     no greater limitations than those captured in the RFC were warranted. *See Burch*, 400 F.3d at 680
     (finding the ALJ properly discounted credibility where the claimant's activities suggested higher
     functionality, including caring for personal needs, cooking, cleaning, shopping, interacting with
     family, and managing her finances); *Fair*, 885 F.2d at 604 (affirming the ALJ's decision where the
     claimant's allegations were inconsistent with activities of personal care, shopping, chores, using
     public transportation, and driving).

     In sum, M.L. has pointed to evidence from which the ALJ perhaps could have found
     additional limitations that would support a conclusion of disability. She fails to show, however,
     that there is not substantial evidence to the contrary, sufficient to support the ALJ's findings. The
     Commissioner's decision therefore must be upheld.

## V.  CONCLUSION

M.L.'s motion for summary judgment is denied, and the Commissioner's motion is granted. A separate judgment will be entered.

**IT IS SO ORDERED**.

Dated: February 10, 2023

RICHARD SEEBORG
Chief United States District Judge